IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ANTHONY T. DAN,<br><br>    Plaintiff,<br><br> vs.<br><br>STATE OF NEBRASKA, and CHERL FINN, Medical staff; MEDICAL STAFF; WALLS, Case Manager; BOYER-SEARS, Lieutenant; BROOKS, Officer; BEEBE, Case Manager; MCNAIR, Case Manager; BUSBOOM, Assistant Warden; CRAIG GABLE, Warden; B. HOLLISTER, Dr., Mental Health Representative; C. HINZMAN, Classification Representative; R. BRITTENHAM, Intelligence Representative; DIANE SABAKSTA-RINE, Chief of Operations; ROBERT MADSEN, Deputy Director; and ROB JEFFREYS, Director, all in their individual capacities;<br><br>    Defendants. | **8:23CV532**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on Plaintiff Anthony T. Dan's Complaint filed on November 30, 2023. Filing No. 1. Plaintiff is incarcerated within the Reception and Treatment Center (RTC) of the Nebraska Department of Correctional Services (NDSC). The Court now conducts an initial review of Plaintiff's claims to determine whether summary dismissal is appropriate

under 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A(b). For the reasons discussed below, Plaintiff's claims must be dismissed.

## I.    SUMMARY OF COMPLAINT

Plaintiff has sued Cherl Finn, the RTC Medical Staff, the Tecumseh State Correctional Institution (TSCI) Medical Staff, Lieutenant Boyer-Sears, Officer Brooks, Case Manager Beebe, Case Manager McNair, Assistant Warden Busboom, Warden Craig Gable, Mental Health Representative Dr. B. Hollister, Classification Representative C. Hinzman, Intelligence Representative R. Brittenham, Chief Of Operations Diane Sabaksta-Rine,[1] Deputy Director Robert Madsen, and Director Rob Jeffreys, all in their individual capacities, and the State of Nebraska. Plaintiff seeks compensatory and punitive damages from the defendants, Filing No. 1 at 9. In addition to his initial complaint, Filing No. 1, Plaintiff has filed 11 documents entitled on the Court's docket as either "Supplement" or "Statement," Filing Nos. 10-11, 18-21, 23-26 & 28, many of which raise allegations wholly unrelated to the claims raised in the initial complaint and against people who are not named defendants. The Court will consider only the claim topics raised in the initial complaint and as to Plaintiff's additional filings, only the information therein which supplements, amends, or corrects the claims in the initial complaint.[2] Limited as such, Plaintiff alleges the following as his "Statement of Claim":

---

[1] The correct spelling, Sabatka-Rine, will be used hereafter in this Memorandum and Order.

[2] Plaintiff has filed documents which allege that prison personnel harmed him when they failed to ensure he had a lower bunk, Filing No. 18 at 21, Filing No. 26 at 4-9; failed to provide his canteen receipts, Filing No. 19 at 12-16; served him contaminated food, Filing No. 21 at 11-12, Filing No. 25 at 11, 14-16, Filing No. 28 at 6; failed to deliver all pages of his civil complaint filing information mailed by the Court, Filing No. 26 at 10-13; lied about him, and thereby caused him to lose his porter job, Filing No. 28 at 4; shined a flashlight in his eyes, Filing No. 28 at 5; provided insufficient or unsuitable clothes from the laundry, Filing No. 21 at 13-15, Filing No. 25 at 5-9; failed to timely perform laboratory tests, Filing No. 23 at 3; and sexually harassed him, Filing No. 25 at 1-4, 12. These filings and allegations have not been considered for this Memorandum and Order.

At all times discussed in his complaint, Plaintiff was incarcerated at either RTC or TSCI.[3] In December of 2019, a bullet became, or was discovered to be, lodged in Plaintiff's spine. Filing No. 1 at 9, 26. Plaintiff continues to have pain. Filing No. 1 at 9. He consented to release of his prior medical records to the NDCS medical staff, and he asked RTC to do an MRI to see if an infection had returned. The MRI request was ignored. Filing No. 1 at 9, 26. As of November 28, 2023, he had still not received an MRI from either RTC or TSCI. Filing No. 1 at 26.

At least as early as January 26, 2022, Plaintiff had a medical pass to use a back brace. He owned the back brace and wore it while at RTC. Filing No. 18 at 20. When Plaintiff was transferred from RTC to TSCI in May of 2022, the back brace was not transferred with his property. Filing No. 1 at 24, 26; Filing No. 18 at 20. Although granted a medical pass to use the back brace until December 31, 2022, Plaintiff has not been allowed to use it since May of 2022.

Plaintiff claims he owned his back brace, and it was lost or destroyed by the prison system when he was transferred between RTC and TSCI. He claims Beebe failed to file an incident report regarding his lost or destroyed property. Filing No. 18 at 1. He filed a grievance. The prison responded on April 11, 2023:

> I have checked with RTC Property, RTC Medical, TSCI property and TSCI Medical and none of them report having a back brace for you. The next step would be to file a TORT claim in order to get your money back for the lost item. We apologize for the inconvenience.

Filing No. 18 at 10. Based on the record, Plaintiff did not file a tort claim.

Plaintiff alleges that when he arrived at TSCI in May of 2022, Beebe assigned Plaintiff to a cell with someone who opposed sharing a cell with him. Plaintiff claims the cellmate enlisted the help of a friend to destroy or steal

---

[3] Based on the record before the Court, it is not always possible to discern when Plaintiff was transferred between the two facilities and, for some of the alleged events, where he was incarcerated.

3

Plaintiff's property. Plaintiff alleges prison staff said the prison would replace or pay for his property, but that did not happen. Plaintiff filed a grievance for replacement of his property by the institution. The grievance was denied. Plaintiff filed a tort claim with supporting documentation.[4] Filing No. 1 at 57, Filing No. 18 at 2-8. On February 27, 2023, that claim was also denied because "[t]he agency investigation found no proof of staff error, negligence, or misconduct on this claim." Filing No. 18 at 3. The claim denial further instructed Plaintiff to file an appeal if he disagreed with the decision. *Id*. Based on the record before the Court, he did not file an appeal.

On June 2, 2023, Plaintiff was found guilty of a 1C Assault and assigned a 1A security risk classification. Filing No. 21 at 7. Plaintiff alleges RTC Case Manager Walls did not file his appeal to misconduct report EYZ5, and Walls lied about that failure. On September 1, 2023, Plaintiff filed an informal grievance, which was denied because a grievance cannot be used to challenge a disciplinary action. Filing No. 1 at 40-41. Plaintiff filed a formal grievance on September 12, 2023, which was denied on October 3, 2023. The denial explained a grievance is the wrong procedure for the allegations raised, and further stated "CM Walls indicates he did not discuss this appeal with you and no appeal was received within the appropriate timeframe by your unit manager." Filing No. 1 at 42. Plaintiff appealed. Filing No. 1 at 43. On October 19, 2023, the appeal was denied because, while Plaintiff claimed CM Walls failed to file his appeal on August 8, 2023, CM Walls was not at the facility that day. Filing No. 1 at 44.

Plaintiff began having complications with his back in July of 2023. Filing No. 1 at 26. On October 5, 2023, Plaintiff filed a grievance, complaining that Finn does not care about his medical needs. Plaintiff states he is not receiving

---

[4] This tort claim Plaintiff filed did not request compensation for Plaintiff's lost or destroyed back brace.

requested pain medications, and the TSCI medical staff refuses to provide him with a back brace. Filing No. 1 at 24, Filing No. 10 at 5, Filing No. at 23 at 1. The grievance was denied. Plaintiff appealed on October 27, 2023. Filing No. 10 at 6. The appeal was denied on November 1, 2023, with the following explanation:

> Medical states according to an x-ray conducted on April 27, 2022, there was a metallic object however other x-rays do not note such. You had a back brace per medical equipment pass from January 26, 2022 to December 31, 2022. Medical also states they do not have any hospital records from 2019 for you. That pass was not renewed once it expired and there is no indication for the need for continued use of a back brace. You are encouraged to continue to work with medical regarding your health concerns. You are also encouraged to sign a release of information for UNMC so that those records can be reviewed by the Provider.

Filing No. 10 at 7.

Plaintiff alleges he signed the medical consent for NDCS to obtain records from UNMC, and the prison has those records. Filing No. 10 at 3. He claims TSCI, and Finn specifically, will not provide medication and medical treatment as retaliation against him. He does not state what may have prompted this alleged retaliation. Filing No. 10 at 1, 4.

Plaintiff alleges that in September of 2023, Boyer-Sears and Busboom targeted and harassed him by placing him in TSCI's restrictive housing unit even though he had no history of doing anything wrong. Filing No. 1 at 28; Filing No. 24 at 5. Plaintiff was apparently at risk of harm from other inmates, so the prison proposed placing Plaintiff in protective custody. But on September 22, 2023, and September 25, 2023, Plaintiff signed forms stating he refused protective custody. Due to threats made against Plaintiff by other inmates, Plaintiff claims Boyer-Sears then transferred him to TSCI on September 25, 2023, and placed him in restrictive custody. Filing No. 1 at 28, 30, 34. Plaintiff alleges Boyer-Sears and Busboom placed Plaintiff in

segregation as a classification action even though he had done nothing wrong and was not part of a Security Threat Group (STG). Filing No. 1 at 27-28. He claims he was placed in restrictive custody because the staff at NDCS are cooperating with the STG. Filing No. 1 at 35.

Plaintiff submitted an informal grievance on September 27, 2023. In response, he was advised that he was placed in Immediate Segregation (IS) upon arrival at TSCI as a classification action. Filing No. 1 at 28. Plaintiff alleges he was not allowed to shower from October 5th through the 8th, and from October 9th through October 10th. Filing No. 1 at 30. Plaintiff submitted a formal grievance regarding his custody classification on October 11, 2023. NDCS did not respond because Plaintiff had exceeded the 2 grievances per week limit. Filing No. 1 at 29.

On October 19, 2023, Plaintiff was placed in Longer-Term Restrictive Housing (LTRH), subject to later review on December 24, 2023. Filing No. 1 at 36. Plaintiff immediately appealed, asking to be transferred to the Omaha Correctional Center (OCC) so he could be closer to family and continue his GED exam preparation classes. Filing No. 1 at 37; Filing No. 21 at 1; Filing No. 24 at 1. Jeffreys responded on October 25, 2023, stating he agreed with the LTRH decision, and further stating "I encourage you to demonstrate appropriate interaction with staff and peers alike. Your LTRH status will be reviewed on or about December 24, 2023." Filing No. 1 at 39.

Plaintiff submitted a grievance challenging his placement in segregation, Filing No. 1 at 30, and appealed the denial of that grievance. Filing No. 1 at 31. The appeal was denied on October 26, 2023, with the following explanation:

> It is noted during the calendar week of October 9-15, 2023, you
> have filed 5 Step One grievances (2023-7184, 2023-7227, 2023-
> 7366, 2023-7367 and 2023-7420) which is over the allowed limit of

2 Step One grievances per calendar week (Monday-Sunday). As such this grievance is being returned unanswered.

You are expected to follow established grievance policy. You may refer to Title 68 Administrative Code Chapter 2 for more information about the grievance process or reference Policy 217.02 Inmate Grievance Procedures which is available in the Law Library at your facility.

IS paperwork dated September 25, 2023 indicates you were placed on IS due to threats made against you by other incarcerated individuals on your unit (B unit). You are approved for removal from restrictive housing when appropriate bed space is available.

Filing No. 1 at 32.

Plaintiff wanted to return to RTC but alleges his request for placement in the general population was denied due to false statements made by Brooks. Filing No. 11 at 2. Plaintiff submitted an informal grievance on October 29, 2023, claiming Brooks showed his case file to STG inmates. Filing No. 11 at 3. Those allegations were denied on November 6, 2023. Plaintiff submitted a formal grievance on November 7, 2023, which was also denied. Filing No. 11 at 4. Plaintiff appealed. Filing No. 11 at 5-6. The appeal was denied on December 1, 2023, because Brooks stated that he lacks access to Plaintiff's grievances on the computer system and denied ever showing any inmate information to another inmate. Filing No. 11 at 6.

As of the date of mailing his federal complaint to the Court, Plaintiff had been in segregation for less than 10 weeks, with a review of segregation scheduled for December 24, 2023.[5] Plaintiff claims that due to placement in

---

[5] After the initial complaint was filed, Plaintiff has continued to challenge his classification and segregation, including the following:

- On February 10, 2024, he submitted an informal grievance opposing protective custody and claiming he is being retaliated against. Filing No. 19 at 17-18.

segregation, he cannot participate in programming, such as preparing to take his GED examination. He claims his lack of programming participation will impact his ability to obtain parole. Filing No. 1 at 33; Filing No. 21 at 5.

Plaintiff claims he was scheduled to appear before the Johnson County Court on October 4, 2023, by Zoom, but the prison did not secure his presence at the hearing. Plaintiff submitted an informal grievance, claiming he was now subject to arrest for failure to appear. Filing No. 1 at 53. NDCS responded that according to its records, it was not notified of any hearing in advance of October 4, 2023. Filing No. 1 at 53. Plaintiff filed a formal grievance on October 19, 2023. NDCS responded that Plaintiff received legal mail on October 5, 2023,

---

- On February 28, 2024, he was charged with threatening language and minor physical contact. A hearing was held, but Plaintiff chose not to attend. He was found guilty. Filing No. 19 at 9-11.
- On March 5, 2024, he submitted an IIR requesting placement in the general population, asserting the finding that he committed an assault in June 2023 was reversed on appeal. Filing No. 20 at 3-4.
- Plaintiff requested an interview with Boyd to discuss his wrongful classification, but Staiger blocked that request on March 7, 2024, and instructed:
  > Please forward this IIR to the lowest level department head associated to your request and give them an opportunity to supply you with an answer to your question. If you do not agree with the information provided to you, please continue to move up the appropriate chain of command and attach the previous response you received. Please review the attached sheet if you are unaware of who to contact regarding your concerns.

  Filing No. 20 at 1-2.
- On March 11, 2024, Plaintiff filed a formal grievance asserting his grievance appeals are not being filed, and he was assigned the wrong housing classification based on falsified documents. Filing No. 21 at 9.
- On Mar 20, 2024, Plaintiff filed an informal grievance stating Blue and Grossman lied and asking to be placed in the general population. Filing No. 21 at 4-5.
- On March 25, 2024, Plaintiff submitted an informal grievance stating the finding that he was guilty of committing an assault in June 2023 was reversed and demanding placement in the general population. Filing No. 21 at 8.
- On April 25, 2024, Plaintiff submitted a classification appeal. Plaintiff's classification appeal was denied on April 29, 2024. Filing No. 24 at 5-6. His next classification hearing was scheduled for July 2024. Filing No. 21 at 1.

8

implying that the mailed notice of hearing arrived a day late. Filing No. 1 at 54. Plaintiff appealed, explaining he now needs to appear in Johnson County Court in person and needs to be picked up at RTC on December 13, 2023, so he can timely arrive for his Johnson County hearing. Filing No. 1 at 55. On November 2, 2023, NDCS responded to the appeal:

> The Johnson County Attorney states your attorney was present at the October 4, 2023 hearing however as you had moved from RTC to TSCI, it is likely TSCI had not been aware of your hearing. As such another hearing is scheduled for December 13, 2023. The Johnson County Attorney's office has been notified of your current location and will make sure the appropriate notice is made to your current facility. No warrant has been filed regarding your October 4, 2023 court appearance.

Filing No. 1 at 56.

Plaintiff alleges that after receiving a prisoner complaint form from the United States District Court for the District of Nebraska, NDCS has not timely responded to his grievances or to every grievance he has submitted. Filing No. 1 at 20; Filing No. 21 at 6; Filing No. 25 at 6-7. He claims TSCI staff opened and copied his legal mail. Liberally construed, he claims that in retaliation for receiving documents to file a lawsuit, TSCI stopped responding to his grievances. Filing No. 1 at 20.

Plaintiff alleges that on five occasions between September 28, 2023, and October 27, 2023, he attempted to call family members or friends, but the calls did not go through. Filing No. 1 at 47-52.

## II. APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The Court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e). The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted,

9

or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

### III. DISCUSSION

Plaintiff seeks recovery under 42 U.S.C. § 1983. To recover under 42 U.S.C. § 1983, Plaintiff must show "the conduct complained of was committed by a person acting under color of state law," and this conduct deprived him of

10

"rights, privileges, or immunities secured by the Constitution or laws of the United States." *DuBose v. Kelly*, 187 F.3d 999, 1002 (8th Cir. 1999). Plaintiff alleges the defendants violated his constitutional rights by improperly housing him in segregation and assigning him a high security housing classification; failing to file an appeal to a misconduct finding; limiting his access to showers; failing to provide medical care; failing to return or compensate him for lost, destroyed, or stolen property; failing to respond to all grievances; opening his legal mail; limiting his access to a working telephone; and failing to facilitate his attendance at court hearings.

## A. Named Defendants with no Allegations

While Plaintiff names Diane Sabatka-Rine as a defendant, the Court did not find her name in any of Plaintiff's voluminous filings. Defendant Craig Gable was the TSCI facility administrator when Plaintiff was placed in LTRH, Filing No. 1 at 36, but Plaintiff's filings contain no allegations that either Sabatka-Rine or Gable were personally involved any of the decisions, actions, or inactions that allegedly caused harm to Plaintiff. Very liberally construed, Plaintiff may be alleging Sabatka-Rine and Gable, in their supervisory roles, are responsible for the conduct of all employees in their chain of command. However, "[i]t is well settled that § 1983 does not impose respondeat superior liability." *Hughes v. Stottlemyre*, 454 F.3d 791, 798 (8th Cir. 2006) (internal quotation marks omitted). To state a § 1983 claim, a plaintiff must allege that the defendant was personally involved in or had direct responsibility for incidents that resulted in injury. *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985). Supervisors can incur liability only for their personal involvement in a constitutional violation, or when their collective inaction amounts to deliberate indifference to or tacit authorization of violative practices. *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010) (quoting *Choate v. Lockhart*, 7 F.3d

11

1370, 1376 (8th Cir. 1993)). Plaintiff's complaint contains no allegations of such conduct by Sabatka-Rine or Gable, and his claims against these defendants must be dismissed. *Reynolds v. Dormire*, 636 F.3d 976, 981 (8th Cir. 2011) (holding "a warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement").

## B. Claims against the State of Nebraska

Plaintiff has named the State of Nebraska as a defendant, and his only requested relief is damages. The Eleventh Amendment bars recovery of damages from the state absent a waiver of immunity by the state or an override of immunity by Congress. *See, e.g.*, *Dover Elevator Co.*, 64 F.3d at 444; *Nevels v. Hanlon*, 656 F.2d 372, 377-78 (8th Cir. 1981). Nebraska has not waived its immunity, *Roe v. Nebraska*, 861 F.3d 785, 789 (8th Cir. 2017), and Congress did not abrogate the states' sovereign immunity in 42 U.S.C. § 1983, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66-67, 71 (1989). In addition, a state, its agencies and instrumentalities, and its employees in their official capacities generally are not considered "persons" as that term is used in § 1983. They cannot be sued for recovery under § 1983. *Hilton v. S.C. Pub. Rys. Comm'n*, 502 U.S. 197, 200-01 (1991); *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008) (holding states, arms of the state, and state officials acting in their official capacities are not subject to suit under § 1983).

Plaintiff's claims against the State of Nebraska must be dismissed.

## C. Segregation and Classification Claims

Plaintiff alleges that in September 2023, Boyer-Sears concluded Plaintiff was in danger in the general population and needed to be placed in protective custody. He claims that Boyer-Sears and Busboom transferred Plaintiff from RTC to Immediate Segregation in TSCI without his consent. Filing No. 1 at 27-28. In October 2023, McNair prepared a document for Plaintiff's placement in LTRH. Filing No. 1 at 34. Madsen, Hollister, Hinzman, and Brittenham were

12

members of the multi-disciplinary review team that reviewed and approved Plaintiff's placement in LTRH on October 19, 2023, with a review scheduled for December 24, 2023. Filing No. 1 at 36. Plaintiff appealed, and Jeffreys upheld the committee's determination on appeal. Filing No. at 1 at 39. Walls and Brooks allegedly provided false information regarding Plaintiff's conduct, resulting in his continued placement in segregation and in misclassifying him as requiring a high security level of confinement.

## 1. Due Process Clause

Plaintiff alleges his due process rights were violated when the prison transferred him to TSCI, placed him in segregation, held him there for a prolonged period of time, and misclassified him as a higher security risk than appropriate, resulting in more restrictive housing. The Due Process Clause "does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." *Sandin v. Conner*, 515 U.S. 472, 478 (1995) (citing *Meachum v. Fano*, 427 U.S. 215, 222 (1976)). "[T]he constitutional rights of prison inmates are legitimately curtailed as a result of their convictions for criminal offenses." *Wycoff v. Nichols*, 94 F.3d 1187, 1190 (8th Cir. 1996). "Imprisonment, by its nature, limits the inmate's freedom, but it does not strip the inmate of all liberty or constitutional protections." *Polizzi v. Sigler*, 564 F.2d 792 (1977) (citing *Wolff v. McDonnell*, 418 U.S. 539, 555-56 (1974)).

To state a due process claim, a plaintiff must first demonstrate that government action deprived him of life, liberty, or property. *Phillips v. Norris*, 320 F.3d 844, 846 (8th Cir. 2003). When challenging segregation and confinement, the issue before the Court is whether Plaintiff was deprived of a liberty interest. *Phillips*, 320 F.3d at 847. Prisoners have a protected liberty interest in avoiding conditions of confinement that impose an "atypical and

13

significant hardship on the inmate in relation to the ordinary incidents of prison life." *Williams v. Hobbs*, 662 F.3d 994, 1000 (8th Cir. 2011) (quoting *Sandin,* 515 U.S. at 484). To assert a liberty interest, the inmate must allege some difference between his conditions in segregation and the conditions in the general population, and that in comparison, the more restrictive conditions of segregation impose an atypical and significant hardship. *Smith v. McKinney*, 954 F.3d 1075, 1082 (8th Cir. 2020)

Plaintiff alleges he did not want to be transferred from RTC to TSCI, but "an inmate has no constitutional right to remain in a particular institution." *Id.* at 1079.

Plaintiff claims he should not have been placed in protective custody and then long-term segregation against his will. But the Eighth Circuit has "consistently held that a demotion to segregation, even without cause, is not itself an atypical and significant hardship." *Smith*, 954 F.3d at 1082; *Hamner v. Burls*, 937 F.3d 1171, 1180 (8th Cir. 2019). An inmate has no due process claim based on being placed in restrictive confinement because he has no protected liberty interest in remaining in the general prison population. *Wycoff,* 94 F.3d at 1190.

Plaintiff states that when placed in segregation he was not allowed to shower "from October 5th [through] October 8th, . . . and then again from October 9th and 10th." Filing No. 1 at 30. The restrictive shower schedule described by Plaintiff is not atypical or a significant hardship. *See Abernathy v. Perry*, 869 F.2d 1146, 1149 (8th Cir.1989) (no constitutional violation where inmate was allowed two showers per week while on investigative status for 35 days); *See also Cosby v. Purkett*, 782 F.Supp. 1324, 1329 (E.D. Mo.1992) (holding the Eighth Amendment is not violated if inmates are allowed only one shower every 72 hours while in administrative segregation); *Heitman v.*

14

*Gabriel*, 524 F.Supp 622, 628 (W.D. Mo. 1981) (twice weekly shower system not in itself a denial of specific rights).

Plaintiff alleges that while in segregation, he was unable to participate in prison programs, particularly GED test preparation courses. Plaintiff claims he needs to obtain his GED to qualify for parole. But denial or termination of discretionary prison programs does not result in either an atypical or a significant hardship in relation to the remainder of the prison population, *Persechini*, 651 F.3d at 807; *Wishon v. Gammon*, 978 F.2d 446, 450 (8th Cir. 1992), and Plaintiff does not have a liberty interest in securing eligibility for parole, *Stewart v. Davies*, 954 F.2d 515 (8th Cir 1992).

The length of segregated housing is a significant factor in deciding whether that confinement becomes an atypical and significant hardship. *Herron v. Wright*, No. 96-2319, 1997 WL 292333, at *1 (8th Cir. June 3, 1997). Here, Plaintiff was in segregation less than 10 weeks before filing his lawsuit, and his continued placement in LTRH was reviewed every 90 days. As alleged in Plaintiff's complaint and attachments, the length of Plaintiff's segregation was neither atypical nor a significant hardship. *See Rahman X v. Morgan*, 300 F.3d 970, 973–74 (8th Cir. 2002) (finding no liberty interest because while plaintiff was kept in a segregation cell for twenty-six months, he was not subject to significant hardships that other prisoners did not face); *Orr v. Larkins*, 610 F.3d 1032, 1033-34 (8th Cir. 2010) (stating that nine months in administrative segregation did not constitute an atypical and significant hardship).

In March of 2024, Plaintiff was assigned to a 1A security level of housing. Plaintiff claims this housing classification is unjustifiably restrictive. He alleges he was not returned from TSCI to RTC due to Brooks' lies. (Filing No. 11 at 2). Plaintiff does not state what Brooks allegedly lied about, when

15

that happened, why he may have done so, or that Plaintiff was denied a hearing on the allegations made by Brooks.

Plaintiff also claims the 1A classification was due to a June 2023 ruling that Plaintiff was involved in an assault. Plaintiff alleges he initiated an appeal of that ruling by handing appeal documents to Wall for filing, but she did not file them. Plaintiff does not allege that Walls' failure to file the appeal was anything other than a mistake, or how the outcome of the misconduct charge would have changed had the appeal been filed. If he is claiming Walls did not file the appeal to retaliate against him, he has not alleged what constitutional right he was exercising that prompted Walls to not file Plaintiff's appeal. In other words, he has failed to allege facts to support a cognizable § 1983 retaliation claim.

Even assuming Walls failed to file the appeal, Walls' alleged violation of the internal policy allowing an administrative appeal of a misconduct ruling does not state a § 1983 claim. Under *Wolff v. McDonnell*, 418 U.S. 539 (1974), a prisoner facing disciplinary charges is entitled to 1) at least 24 hours advance written notice of the charge; 2) an opportunity to have their case heard and decided by an impartial decisionmaker; 3) an opportunity to call witnesses and present documentary evidence when consistent with institutional safety and correctional goals; and 4) a written statement by the decisionmaker of the evidence relied on and the reasons for the disciplinary action. The right to appeal is not a requirement under *Wolff*. And while regulations of the Nebraska Department of Correctional Services may afford appeal rights, Plaintiff does not have a liberty interest in the procedure used for deciding substantive due process claims. *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996) (holding there is no federal constitutional liberty interest in having state officers follow state procedural law) (collecting cases). "A state

16

may choose to afford an administrative appeal in prison disciplinary actions, . . . but this does not mean that errors in the administrative appeals process violate a state prisoner's federally protected rights. Violations of due process rights guaranteed by state law or department of correction policy state no claim under § 1983." *Boyd v. Anderson*, 265 F. Supp. 2d 952, 961 (N.D. Ind. 2003). See also, *Reed v. Washington*, No. 09-cv-5677, 2010 WL 2330380, at *3 (W.D. Wash. May 10, 2010*); *U. S. ex rel. Jones v. Rundle*, 358 F. Supp. 939, 947 (E.D. Pa. 1973).

Finally, even if Plaintiff's housing classification was based on an erroneous disciplinary ruling, *Glick v. Walker*, 834 F.2d 709, 710 (8th Cir. 1987), which results in no access to prison programs, a prisoner cannot invoke due process rights in either prisoner classification or eligibility for rehabilitative programs. *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976).

Plaintiff has failed to state a due process claim arising from his transfer to TSCI, placement in segregation, and restrictive housing classification.

## 2. Eighth Amendment

Conditions of confinement are subject to scrutiny under the Eighth Amendment." *Brown v. Nix*, 33 F.3d 951, 954 (8th Cir. 1994). The Eighth Amendment is violated when 1) a prison official's act or omission results in the denial of the minimal civilized measure of life's necessities; and 2) the prison official acts with deliberate indifference—he knows of and disregards an excessive risk to inmate health and safety. *Id*. The segregation and housing classification allegations within Plaintiff's complaint do not support these essential elements of an Eighth Amendment claim. *Id*. (holding the Eighth Amendment is not violated by imposing terms of administrative segregation ranging from two days to one year and ultimately totaling nearly nine years).

## 3. Equal Protection Clause

Plaintiff claims he is being unfairly treated. To the extent he may be attempting to raise an equal protection claim, he has failed to do so. Plaintiff has not alleged that he was treated differently from other similarly situated inmates. *Klinger v. Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir.1994) (equal protection claim requires plaintiff to demonstrate he was treated differently than others similarly situated).

### 4. Retaliation

Plaintiff states he was placed in segregation and misclassified as needing high level security due to retaliation. To establish a § 1983 claim for retaliation, a plaintiff must allege that 1) he engaged in a protected activity, 2) the defendants responded with adverse action that would chill a person of ordinary firmness from continuing in the activity, and 3) the adverse action was motivated at least in part by the exercise of the protected activity. *Spencer v. Jackson County Mo.*, 738 F.3d 907 (2013). *See also Beaulieu v. Ludeman*, 690 F.3d 1017, 1025 (8th Cir. 2012); *L.L. Nelson Enters., Inc. v. Cnty. of St. Louis, Mo.*, 673 F.3d 799, 807–08 (8th Cir. 2012). The Court disregards conclusory allegations of retaliation when determining if a plaintiff has stated a retaliation claim.

Here, Plaintiff's filings do not allege what constitutional rights he exercised or that asserting those rights prompted any of the defendants to retaliate against him by placing him in segregation or assigning a restrictive housing classification. Plaintiff has not asserted a claim that the segregation and housing decisions he was subjected to were in retaliation for his exercise of constitutional rights.

Plaintiff has failed to allege a due process, equal protection, Eighth Amendment, or retaliation claim against any of the defendants arising from being transferred between RTC and TSCI, placed in segregation, assigned to

LTRH, or classified as requiring high security and more restrictive housing. These claims against Boyer-Sears, Busboom, McNair, Madsen, Hollister, Hinzman, Brittenham, Jeffreys, Walls, and Brooks must therefore be dismissed.

## D. Eighth Amendment Claim for Lack of Medical Care

Plaintiff alleges the RTC Medical Staff, the TSCI Medical Staff, and Cherl Finn have not allowed him to use his back brace, have not prescribed pain medications, and did not perform an MRI in violation of Plaintiff's Eighth Amendment rights.

Under the Eighth Amendment's prohibition against cruel and unusual punishment, prison officials are forbidden from "unnecessarily and wantonly inflicting pain' on an inmate by acting with '"deliberate indifference"' toward serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference "is a stringent standard of fault, requiring proof that a [state] actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 410 (1997).

A claim of deliberate indifference to medical needs has both an objective and subjective component. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). When alleging a deprivation of medical care, the inmate must show 1) an objectively serious medical need; and 2) the defendants knew of the medical need but were deliberately indifferent to it. *See Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010); *Jones v. Minn. Dep't of Corrs.*, 512 F.3d 478, 481–82 (8th Cir. 2008); *Albertson v. Norris*, 458 F.3d 762, 765 (8th Cir. 2006); *Grayson v. Ross*, 454 F.3d 802, 808–09 (8th Cir. 2006). A medical need is objectively serious "if the medical need in question is supported by medical evidence, such as a physician's diagnosis, or is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Hancock v. Arnott*, 39 F.4th

19

482, 486 (8th Cir. 2022) (quoting *Ryan v. Armstrong*, 850 F.3d 419, 425 (8th Cir. 2017)). As to the subjective element, a plaintiff must plead that each defendant acted with a sufficiently culpable state of mind. *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). A plaintiff must show a prison official knew of and disregarded the plaintiff's objectively serious medical needs. *Robinson v. Hager*, 292 F.3d 560, 564 (8th Cir. 2002).

Plaintiff has named the RTC Medical Staff and the TCSI Medical Staff as defendants. But other than Finn, the complaint does not name or describe the specific people within the RTC and TSCI medical staffs that he wants to sue or what those specific people allegedly did or failed to do that caused him harm. Since Plaintiff's individual capacity claims against the "Medical Staff" do not provide sufficient notice of who is being sued or the allegations against them, Plaintiff's claims against the RTC Medical Staff and TSCI Medical Staff must be dismissed.

As to Finn, Plaintiff's sole allegation is that she does not care about Plaintiff's medical condition because it is not her injury. Filing No. 1 at 24. While Plaintiff alleges he needed pain medication, an MRI, and a back brace, he does not allege how and to what extent Finn was responsible for his medical care or what, specifically, she did or failed to do in diagnosing, treating, or managing Plaintiff's medical condition. Assuming, without deciding, that Plaintiff has a serious medical condition, Plaintiff's conclusory statements do not sufficiently allege Finn disregarded or ignored Plaintiff's needs.

Even had Plaintiff identified the specific defendants involved in his medical care and their respective actions or inactions, Plaintiff's complaint alleges, at most, that he disagrees with the medical care he received while confined in the RTC and TCSI. But inmates have no constitutional right to receive a particular or requested course of treatment, and prison medical

20

professionals remain free to exercise their independent medical judgment. *Saylor v. Nebraska*, 812 F.3d 637, 646 (8th Cir. 2016) (citing *Meuir v. Greene Cty. Jail Emps.*, 487 F.3d 1115, 1118 (8th Cir. 2007). A showing of deliberate indifference "requires more than mere disagreement with treatment decisions.'" *Pietrafeso v. Lawrence Cnty., S.D.*, 452 F.3d 978, 983 (8th Cir. 2006) (quoting *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006)). And mere negligence or medical malpractice are insufficient to rise to an Eighth Amendment violation. *Estelle,* 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.")

Plaintiff has failed to allege an Eighth Amendment claim against the defendants for being deliberately indifferent to Plaintiff's medical needs.

## E. Loss of Personal Property

Plaintiff claims his back brace was lost or destroyed when he was moved from RTC to TSCI in 2023, and personal property in his cell was destroyed or stolen in May of 2022. Plaintiff now requests recovery under 42 U.S.C § 1983.

As to the back brace, Plaintiff has not alleged who, specifically, is responsible for losing it. To the extent Plaintiff's damage claim is against the State, for the reasons previously explained, the claim is barred by sovereign immunity.[6] And even had Plaintiff identified someone responsible for the loss, the actions of prison custodians in mislaying and losing an inmate's property do not violate the Due Process Clause of the Fourteenth Amendment. More

---

[6] In response to Plaintiff's grievances, Plaintiff was advised to file a state tort claim for the lost back brace, but he did not. Plaintiff did file a state tort claim for his May 2022 losses, but he did not prevail. He was advised he could appeal, but he did not. That said, the State of Nebraska has not waived its sovereign immunity from property loss claims filed by prisoners against state prison personnel. *Rouse v. State*, 921 N.W.2d 355, 361, 301 Neb. 1037, 1044 (Neb. 2019).

21

than negligence is required to prove a plaintiff was "deprived" of his constitutional rights. *Daniels v. Williams*, 474 U.S. 327, 332 (1986) (holding a prisoner unable to recover in tort from the State due to sovereign immunity could also not recover under the Due Process Clause for loss of a liberty interest caused by a prison guard's negligence).

Likewise, as to the May 2022 property losses, Plaintiff cannot assert a valid due process claim against Beebe merely because she assigned Plaintiff to live with a cellmate who stole or destroyed Plaintiff's property. Plaintiff has neither alleged the requisite culpability for a constitutional claim against Beebe, nor facts to show Beebe's conduct caused Plaintiff's property losses.

Plaintiff's due process claims for the loss of personal property must be dismissed.[7]

## F. Unanswered Grievances

Plaintiff alleges that after receiving civil complaint forms from the United States District Court, the prison staff stopped responding, or timely responding, to every grievance he submitted. Filing No. 1 at 20. An inmate does not have a protected liberty or property interest in access to the grievance procedure. *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991). *See also Geiger v. Jowers*, 404 F.3d 371 (5th Cir. 2005); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996) (state's inmate grievance procedures do not give rise to liberty interest protected by the due process clause). So, assuming the prison did not respond to all of Plaintiff's grievances, that fact, standing alone, does not state a § 1983 claim.

Liberally construed, Plaintiff claims his grievances were ignored because he received a civil complaint packet in the mail. Plaintiff claims the prison is

---

[7] Plaintiff does not have a Fifth Amendment takings claim because there is not, and could not plausibly be, an allegation that his personal property was taken for a public use.

refusing to consider his grievances in retaliation for Plaintiff exercising his First Amendment right of access to the courts. To state a First Amendment retaliation claim, Plaintiff must allege he exercised a First Amendment right, the prison stopped responding to his grievances, and the exercise of his First Amendment rights was a substantial or motivating factor for the prison's refusal to respond, or timely respond, to every grievance submitted by Plaintiff. *Haynes v. Stephenson*, 588 F.3d 1152, 1155 (8th Cir. 2009).

Here, Plaintiff has not identified, by name or description, who was responsible for the alleged retaliation. If he intended to sue the State of Nebraska for damages arising from First Amendment retaliation, that claim is barred by sovereign immunity. Moreover, Plaintiff alleges no facts supporting a claim that the prison ignored some of Plaintiff's grievances because Plaintiff received civil litigation forms in the mail. Plaintiff's speculative and conclusory statements fail to support a § 1983 claim for First Amendment retaliation,

Plaintiff's allegations regarding the prison's lack of or untimely response to his grievances fails to state a claim under 42 U.S.C. § 1983.

## G. Opening Legal Mail

Plaintiff alleges the "Tecumseh State Correctional Staff was reading my legal mail when they open[ed] my legal mail and [made] copies of my legal mail." Filing No. 1 at 20. In context, he may be claiming mailroom personnel opened the envelope with the civil complaint forms received from the United States District Court and then read and copied them. These forms are available online, are not privileged attorney-client communications, and are not marked as "legal mail" when sent by the court to prisoners. So, while a mailing with civil complaint forms may provide access to the court, it is not "legal mail." "[T]he mere fact that a letter comes from a legal source is insufficient to

indicate that it is confidential and requires special treatment" by the prison mailroom. *Harrod v. Halford*, 773 F.2d 234, 236 (8th Cir. 1985).

Moreover, even assuming the mailroom opened Plaintiff's legal mail, an isolated, inadvertent instance of opening incoming confidential legal mail does not support a § 1983 damages action. *Beaulieu v. Ludeman*, 690 F.3d 1017, 1037 (8th Cir. 2012). "[A]n isolated incident, without any evidence of improper motive or resulting interference with the inmate's right to counsel or access to the courts, does not give rise to a constitutional violation." *Id.* (quoting *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997)).

Plaintiff has alleged nothing more than an incident of opening what he refers to as "legal mail," with no identification of specifically what that mail was, who opened it, any motive that person may had had, or any interference with Plaintiff's right to counsel or access to the courts.

Plaintiff's allegation that legal mail was opened does not state a claim for recovery under 42 U.S.C. § 1983.

## H. Lack of Phone Access

Plaintiff claims he was unable to reach family and friends on the telephone five times over a one-month timeframe. Plaintiff has not named a specific defendant responsible for the lack of reliable telephone service, and he has not alleged facts to indicate the connection problem was due to a prison telephone malfunction. Moreover, even for attorney communications, "[a] prisoner has no right to unlimited phone use." *Beaulieu v. Ludeman*, 690 F.3d 1017, 1039 (8th Cir. 2012). Plaintiff has failed to state a § 1983 claim for being unable to reach his family and friends by telephone five times in one month.

## I. Unattended Court Appearance

Plaintiff claims he was not allowed to attend a Zoom hearing in a state court case, exposing him to the risk of arrest. But Plaintiff was not arrested,

24

his state defense counsel attended the hearing, no arrest warrant was issued, and the hearing was rescheduled to accommodate Plaintiff's attendance. Plaintiff cannot state a § 1983 for being unable to attend a state court hearing.

## IV. CONCLUSION

The Court is required to dismiss a complaint, or any portion of it, that states a frivolous or malicious claim, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Eleventh Amendment immunity bars Plaintiff's damage claims against the State of Nebraska. Plaintiff has raised no allegations against Sabatka-Rine and Gable, and he has therefore failed to state a claim against these defendants. And as to the remaining defendants, even liberally construed, Plaintiff's allegations fail to state a claim that his constitutional rights were violated. The complaint must be dismissed.

IT IS ORDERED:

1.   This matter is dismissed without prejudice.
2.   A separate judgment will be entered.
3.   Plaintiff's Motion for Order to Transport, Filing No. 29, his Motion to Issue Arrest Warrant, Filing No. 31, and Motion for a Prompt Hearing, Filing No. 32, are denied.

Dated this 12th day of August, 2025.

BY THE COURT:

John M. Gerrard

John M. Gerrard
Senior United States District Judge

25